485 S.E.2d 381

**In the Matter of Steven E. MUNDY, Respondent.**

**No. 24619.**

Supreme Court of South Carolina.

Submitted April 7, 1997.

Decided May 12, 1997.

Steven E. Mundy, Abbeville, pro se.

Attorney General Charles Molony Condon and Senior Assistant Attorney General James G. Bogle, Jr., Columbia, for complainant.

PER CURIAM.

In this attorney grievance matter, respondent has admitted the allegations against him and consents to disbarment with

restitution as a condition of reinstatement. We accept his admission and disbar respondent.

The admitted allegations involve several different matters, discussed separately below.

*Drawdy Matter*

In March of 1995, Drawdy borrowed $43,500 from Associates Finance Company of Greenwood as a first mortgage on a home. In October of 1996, Drawdy refinanced that loan by borrowing $44,300 from First Union Bank of Greenwood. Respondent closed the loan. Drawdy's check for $44,300 was deposited in respondent's trust account on October 29, 1996. On October 31, the balance of respondent's trust account fell to $17,987.92; the balance then fell to $2,943 on November 7, 1996, with no disbursement to Associates Finance as required. The majority of Drawdy's funds were misappropriated and converted to purposes other than which they were intended.

On three occasions, respondent represented to Drawdy and Associates Finance he had mailed the check but it had gotten lost. In fact, no payoff check had been issued. In late December of 1996, respondent delivered a trust account check in the amount of $41,701.05 to Associates Finance to pay off Drawdy's loan. This check was returned for non-sufficient funds (NSF). As of the date of respondent's Affidavit and Consent to Sanction, Associates Finance had not been paid.

*Sammons Matter*

The Sammons borrowed $63,000 from First Union Bank of Greenwood in December 1996 to pay off a mortgage and consolidate loans. They retained respondent to close their loan. The monthly statements from respondent's trust account show a deposit of $63,000 on January 3, 1997. The account had a negative beginning balance of $72,912.91 on January 1, 1997, so the deposit of the Sammons' money only reduced the negative balance to $9,960.91. The Sammons funds were immediately misappropriated and converted to purposes other than those for which they were intended.

When the Sammons' loan closed, respondent issued a trust account check for $39,759.06 to pay off a different mortgage. That check was returned for NSF and has not been repaid. Respondent also issued four additional trust account checks

totaling $20,691.99, all of which were returned for NSF. Ms. Sammons received one of these checks in the amount of $3,155.68 and contacted respondent when it was returned. Respondent's parents loaned him money and he deposited $3,200 into the Sammons' account. Respondent also gave Ms. Sammons a trust account check for $1,181.11 to be applied toward her Master Card bill as part of the plan to consolidate loans. That check cleared and was posted to the Master Card account in January of 1997.

*Murdock Trust Matter*

Respondent served as trustee in a Probate Court matter involving Murdock. In late December of 1996, respondent sold land relating to the trust for $80,500. The buyer's check for the purchase price was deposited in respondent's trust account on December 19, 1996. The purchaser stopped payment on the check causing a return item chargeback to respondent's trust account for the amount of the check.

Before this chargeback was debited on December 26, 1996, respondent wrote two trust account checks in the amounts of $40,000 and $93,500 which were negotiated on December 23, 1996. Neither check related to the Murdock Trust; one was a refund to another client and the other was a payment relating to another client's real estate closing. The beginning balance of respondent's trust account for the month of December 1996 was ( − ) $23,816.65. The ending balance for that month was ( − ) $72,912.91. Accordingly, the Murdock Trust funds were misappropriated and converted to purposes other than those for which they were intended.

*Wagler Matter*

In January of 1997, Wagler sold property to the Isbles for approximately $56,000 with a $6,000 down payment. Respondent was the closing attorney and deposited $50,285 into his trust account. The entire deposit was immediately misappropriated and converted to purposes other than those for which it was intended. Respondent issued a trust account check to Wagler in the amount of $49,555 which was returned for NSF. Wagler contacted respondent on numerous occasions and was told efforts were underway to correct the problem. As of the date of the complaint against respondent, the check was still outstanding.

*Cooper Communities Matter*

The Baschs purchased a lot at Savannah Lakes Village; respondent did the closing in December of 1996. The payoff check in the amount of $38,086.99 was issued on respondent's trust account and delivered to the developer of Savannah Lakes Village, Cooper Communities, of Bella Vista, Arkansas. The check was returned for NSF. Robert Duvall with the Legal Department of Cooper Communities, or someone at his request, left three messages for respondent concerning the returned check. Respondent called Duvall or his designee and gave him false information, telling him two of respondent's clients had given him personal checks that did not clear which caused the Cooper Communities check to be returned NSF. Thereafter, telephone calls to respondent's office were not returned.

*Forgery*

Respondent negotiated checks from his trust account which contained manufactured, false and misleading information with the intent to deceive. Two checks in the amount of $7,800 were made payable to Marion E. Mundy. Respondent then forged the name of the payee and assigned the check back to himself, received the funds, and applied them to personal debts or gave them to Helen Miller. Respondent also drew a check payable to Helen Miller for $6,100 with the manufactured information that it was "[p]roceeds from loan to April Williams."

*Helen Miller; a/k/a Helen Leach; a/k/a Helen Anderson*

Helen Miller retained respondent to represent her in her divorce and in some criminal matters including check fraud and NSF checks. Respondent also represented her in an action for breach of trust and another civil action. Respondent and Miller[1] are currently defendants in a civil suit alleging fraud, negligent misrepresentation and breach of contract.

Between July of 1996 and January of 1997, respondent issued to Miller a minimum of five checks from the law firm's operating account, twenty-two checks from the law firm's trust account, and one check from a second business in which

---

1. The lawsuit names Helen Miller as Helen Anderson.

respondent is involved. These checks totaled $348,100. Respondent admits these checks were completely outside the scope of the attorney/client relationship and outside the scope of any lawful purpose. He also admits he misappropriated and converted client and estate funds totaling approximately $300,000 to pay Miller for an unlawful purpose.

Respondent received two checks for $125,000 each from Helen Miller issued from her business account payable to the law firm. Respondent states he asked Miller for these funds to cover client fund shortages created by an ongoing scheme of extortion by Miller. Respondent deposited these checks into the law firm's trust account on January 8, 1997, based purely on the information these checks were good. After deposit, the two checks were returned due to NSF.

*Trust Account Matter*

The bank statements from respondent's trust account show twenty-two NSF charges and at least one overdraft charge during the time between July 1996 and January 1997. During this time period, the account had a negative balance approximately twelve times.

*Conclusion*

The acts committed by respondent are ones of serious misconduct. By his own admission he has violated many of the Rules of Professional Responsibility. Rule 407, SCACR. He has failed to provide competent representation. Rule 1.1. He has failed to keep clients reasonably informed and has not promptly complied with reasonable requests for information. Rule 1.4(a). He has not consulted clients concerning the means by which the objectives of his representation were to be pursued. Rule 1.2(a). He has not acted with reasonable diligence and promptness in representing his clients. Rule 1.3.

Furthermore, respondent has failed to promptly deliver funds to third persons which they were entitled to receive, misappropriated client funds, and failed to promptly render a full accounting as required by Rule 1.15. He has made false statements of material fact and offered evidence he knew to be false to a tribunal. Rule 3.3. He has also made false statements of material fact to third persons. Rule 4.1(a). He has committed criminal acts that reflect adversely upon his hones-

ty, trustworthiness or fitness as a lawyer. Rule 8.4(b). He has engaged in reprehensible conduct involving moral turpitude, dishonesty, fraud, deceit and misrepresentation. Rule 8.4(c) and (d). He has also engaged in conduct prejudicial to the administration of justice. Rule 8.4(e). Under the Rules for Lawyer Disciplinary Enforcement, his behavior is grounds for disbarment. Rule 413, SCACR.

Accordingly, we disbar respondent from the practice of law. Within fifteen days of the date of this opinion, respondent shall file an affidavit with the Clerk of Court showing that he has complied with Paragraph 30 of Rule 413, SCACR, and shall also surrender his Certificate of Admission to the Practice of Law to the Clerk of Court. Restitution is a condition of his reinstatement.

DISBARRED.